THE STATE OF DELAWARE for the use of ALLAN THOMPSON vs. JOSEPH M'CLAY, THOMAS HAWKINS and ALEXANDER MOORE.

If a tenant abandons property. though he leaves some of his goods on the premises, the landlord may enter and take proper care of the premises without being guilty of an eviction.

It seems the incoming tenant has a right to fill the ice house before his term commences, from necessity and the custom.

SUMMONS debt on a constable's bond. Narr. Plea "Performance." Replication suggesting breaches; rejoinder; surrejoinder and issues.

The replication assigned as a breach, (under the act of assembly) that the said Allan Thompson had demised certain premises to one Hugh H. Reading; that a half year's rent ($312 50) was growing due at the time of the taking of Reading's goods, being upon said premises, by M'Clay under process of attachment at the suit of one Ford, issued by justice M'Dowell on the 28th September, 1833. That Reading confessed judgment in said suit on the 15th October, 1833, and a fi. fa. was issued on the same day, under which M'Clay sold the goods (still being on the premises) for $135 11, which he has neglected and refused to pay over to Thompson in part payment of the rent afsd.

The rejoinder was "That before the said rent became due, the said Allan Thompson, to wit: on the —— day of —— entered upon the premises so leased to the said Hugh H. Reading and took possession of the same, and ejected, expelled, put out and amoved the said Hugh H. Reading from the possession thereof, and kept and continued him the said Hugh H. Reading so ejected, expelled, put out and amoved from thence hitherto, to wit, &c.

It appeared in evidence that Reading the tenant went off on the night of the 24th of September, taking with him a considerable portion of his household furniture, but leaving property on the premises to the value of $135 11. He was accompanied by his family with the exception of a bar keeper who said that he was not authorized and would not take the responsibility of keeping the house open. It was a large tavern establishment in the city of Wilmington. On the 26th September Thompson, the landlord, levied a distress on the goods remaining upon the premises, locked up the house and took charge of the key; and afterwards let the house to another tenant, his term to commence on the 25th of March, when Reading's would expire. The succeeding tenant filled the ice house in January, and for this purpose got the key of Thompson. The goods were sold on a judgment recovered by Ford, the bar keeper of Reading on a foreign attachment, sued out on the 28th of September; and the constable paid the money over to the attaching creditor, without satisfying the landlord's claim for rent. The only question was whether there had been an eviction by the landlord, and a consequent discharge or forfeiture of the rent.

Mr. R. H. Bayard, contended that the facts amounted to an eviction; and if landlord enter upon any part of the demised premises during the term and evict the tenant, he forfeits the accruing rent for the whole premises. And he cited 1 Saund. 204, n. 2.

*Comyn. on Landlord and Tenant,* 523, *No.* 17, *Law Library;* 3 *Camp.* 513; 1 *Starkie* 94; 2 *Com. Law Rep.* 310; *Comyn.* 216.

*Mr. J. A. Bayard,* contra—that there can be no eviction unless the landlord take possession to the *exclusion* of the tenant. The locking up of an abandoned house does not amount to an eviction; and the landlord has the right under such circumstances to take care of his property.

*By the Court—Clayton Chief Justice:* The pleadings admit that the plff. has a right to recover his rent unless he evicted the tenant Reading during his term. An eviction is any entry by the landlord upon the possession of his tenant with a design to injure or prejudice the tenant's right of possession. The premises in question were rented by Reading for one year from the 25th of March, 1833. On the 25th of September he absconded in the night time and left the state, taking with him a part of his goods. The goods left on the premises were sold by the deft. M'Clay on execution process. They were also levied upon by distress at the suit of the plff. for rent; and it is not denied that he is entitled to be paid out of the proceeds of the sales unless his conduct in taking possession of the premises occasioned a forfeiture of the rent. If a tenant absconds and goes out of the government and abandons the property, common sense would teach that the landlord had the right to take proper care of the abandoned premises to prevent their going to destruction. The object, therefore, of Mr. Thompson in entering upon these premises and locking up the house should govern in ascertaining whether there was an eviction. If he entered with a view of dispossessing the tenant, keeping him out, or prejudicing his rights as tenant; or if he did so dispossess him, against his will; it would be an eviction; but if all the acts of Thompson amounted only to reasonable care of his property; and were not designed and had not the effect to dispossess or keep out Reading against his will, they would not constitute an eviction. The fact of again leasing the property is no evidence of an eviction, for the term was not to commence until the expiration of Reading's lease; and these arrangements for a new tenancy must always be made before the expiration of the old. The entry by the new tenant for the purpose of filling the ice house is not proved to have been by authority of the landlord; and it would, perhaps, be justified by the custom of the country. Necessity and the custom require that the incoming tenant should be permitted to fill the ice house before his term commences as much as that the way-going tenant shall return to reap his wheat crop.

Verdict for plaintiff.

*J. A. Bayard,* for plaintiff.
*R. H. Bayard,* for defendants.